LaRAmoke, Judge,
delivered the opinion of the court:
Plaintiff, a civilian employee, seeks recovery of salary for a period of alleged wrongful separation from Federal employment.
Both plaintiff and defendant have filed motions for summary judgment, and the issues presented are whether plaintiff’s petition states a cause of action and, if so, is plaintiff’s claim barred by laches.
*94 The petition, affidavits, and exhibits reveal the following facts: On August 10,1953, plaintiff was employed as an Aeronautical Research Scientist at the Lewis Flight Propulsion Laboratory, Cleveland, Ohio, a branch of the National Advisory Committee for Aeronautics, which will hereinafter be referred to as NACA.
Plaintiff’s was an indefinite appointment, and the trial period pursuant to 5 CFR (1952 Supp.) 2.115 (a) was for one year.
The sequence of applicable statutes, rules and regulations pertaining to plaintiff’s employment and suspension are as follows: Plaintiff’s claim in the petition is based on the Act of August 26, 1950 (Public Law 733), 64 Stat. 476, which provides in pertinent part as follows:
* * * Director, National Advisory Committee for Aeronautics, may, in his absolute discretion and when deemed necessary in the interest of national security, suspend, without pay, any civilian * * * employee of the * * * National Advisory Committee for Aeronautics * * * Provided further, That any person whose employment is so suspended or terminated under the authority of this Act may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for all or any part of the period of such suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person: * * *.
Executive Order 10450 of April 27, 1953, 3 CFR (1953 Supp.) 72, provides in pertinent part as follows:
Section 1. In addition to the departments and agencies specified in the said Act of August 26,1950 (Public Law No. 733 (81st Congress-2d Session)) * * * the provisions of that act shall apply to all other departments and agencies of the Government.
It is noted that at this point the provisions of Public Law 733, supra, were made to apply to all Federal agencies. In other words, if any Federal agency in its discretion suspended an employee and reinstated said employee, by law *95 the employee was entitled to compensation for the period of suspension.
The plaintiff was suspended at the instance of the Civil Service Commission.
At the time of plaintiff’s appointment Civil Service Rule V, 5 CFR 5.2 (1949) provided as follows:
Authority of the Commission to malee investigations. The Commission may make appropriate investigations to secure enforcement of the Civil Service Act, Eules, and Eegulations, including investigation of the qualifications and suitability of applicants for positions in the competitive service. It may authorize appointments conditioned upon a subsequent determination that the requirements of law or the Civil Service Eules and Eeg-ulations have been met.
The civil service regulation in effect at that time provided a period of 18 months from the date of employment to investigate and order removal if warranted. 5 CFE (1952 Supp.) 2.112 (b).
Apparently the employing agency had no facilities for investigation and quite correctly turned the matter over to the Civil Service Commission for investigation as to fitness. Having done so, the Civil Service Commission obviously was acting for and in place of the NACA. The Civil Service Commission could only act under laws and regulations under the Civil Service Act, and if it had no power to cross over and investigate under Public Law 738, then plaintiff could never have been effectively and legally removed. However, under Executive Order 10450, section 8 (b), the Civil Service Commission was given the power to investigate.
On March 25, 1954, after investigation and within the time allowed by the regulation above cited, the Eegional Director, Sixth U. S. Civil Service Eegion, directed the NACA to dismiss plaintiff for the reason that it had been determined that plaintiff failed to meet the Commission’s suitability standards for Government employment.
Plaintiff appealed the action and his appeal was denied by letter of April 13,1954, from the Eegional Director.
Plaintiff was then separated from employment pursuant to the direction of the Civil Service Commission.
*96 On April 24, 1954, plaintiff appealed the action taken by the Sixth U. S. Civil Service Region to the Commission’s .Board of Appeals and Eeview. The decision was later affirmed.
A request for reconsideration by the Board of Appeals and Review was made and the Commission considered the previous adverse decision and reversed. The reversal letter reads as follows:
This is in further reference to your appeal from the decision of the Commission’s Sixth Eegional Office which resulted in the finding that you are ineligible for appointment in the Federal Civil Service on suitability grounds. Eeference is also made to the decision of the Board of Appeals and review, conveyed to you by letter of September 28,1954, in the matter.
The Commissioners have reviewed the entire record in your case. After a careful consideration of all the facts and circumstances, it has been concluded that the evidence in the Commission’s files relating to matters within’ its jurisdiction is not sufficient to sustain the finding that you do not meet the Commission’s suitability standards. The decisions of the Sixth Eegion and the Board of Appeals and Eeview have therefore been reversed. Any applications or eligibilities which may have been cancelled as the result of the Eegion’s decision are reinstated and the bar is removed.
The Commission will interpose no objection, insofar as the matters related to the above considerations are concerned, to your reemployment in the Federal Civil Service in a position for which you may be qualified and considered pursuant to civil service regulations. However, any consideration you may receive for appointment to any Federal position, will be subject to such determination regarding any questions of security as the appointing agency may consider necessary.
Following this, plaintiff’s attorney demanded reinstatement by the agency and also demanded back pay. This demand was denied. Plaintiff then requested advice from the Civil Service Commission as to its role in plaintiff’s separation. The Civil Service Commission replied that under applicable laws and regulations the separation had been ordered by the Civil Service Commission and had not been initiated by the agency.
*97 A claim for back pay was filed with the Comptroller General, which was denied. This petition filed January 4,1957, resulted.
The affidavit of J. S. Brown, Administrative Management Officer of the NACA, discloses that plaintiff has never been reinstated, restored to duty, or reemployed in the agency.
The theory of plaintiff’s petition and brief is that the Civil Service Commission was in effect the agent of the NACA when it investigated and that its acts were in effect the acts of the NACA. This it seems to us is an appealing and understandable theory.
The agency itself had a perfect right to investigate and suspend. If later it found the investigation disclosed otherwise and reversed its position, it had authority to restore and reinstate. In these circumstances plaintiff would have been paid under Public Law 733, sufra.
When the Civil Service Commission, acting for the agency, made the investigation, the laws and regulations provided that the Civil Service Commission could order the agency to suspend. In this climate, had the Civil Service Commission not ordered the suspension, plaintiff would have pursued his employment without interruption. By the same token, had the agency itself investigated and found plaintiff not to be a security risk, plaintiff would have continued employment without interruption. Furthermore, during the pendency of the proceedings Civil Service Rule Y, as changed by Executive Order 10577, 3 CFR (1954 Supp.) 87, came into effect, providing that when the agency suspends pursuant to the Commission’s instructions and the Commission reverses, the agency shall on request of the Commission restore the employee to duty. What then is the result of this situation ? The Civil Service Commission investigated, found plaintiff not suitable, and directed his suspension. Later, further investigation and review disclosed it was wrong; i. e., that plaintiff was not disqualified for employment. Under these circumstances what did the Civil Service Commission do? It reversed the case but only lifted the bar to future Federal employment. The question then is, was the Civil Service Commission arbitrary in not ordering plaintiff’s reinstatement or restoration to *98 duty instead of merely lifting the bar to future employment. An analogous situation would be this: A citizen is convicted of a felony and the punishment prescribed is incarceration for a period of two years, together with disfranchisement for a determinate period of time. Defendant is sentenced to imprisonment for a period of two years and disfranchised for a period of five years. Later, on appeal and review an appellate court reverses on the ground that there was no evidence to sustain a conviction. However, that part of the sentence prescribing incarceration is allowed to stand and only the disfranchisement is erased from the sentence. Could it be said as a result that defendant was a little bit guilty and therefore justify the remaining portion of the sentence? Obviously not — the court has ruled that defendant was not guilty and it should have fully exonerated him.
Here the Civil Service Commission reversed its earlier ruling and said in effect that plaintiff was suitable for the job and not a security risk. The Civil Service Commission had a perfect right to find plaintiff not suitable because of association and could have ordered him suspended and barred from future employment if their investigation so warranted. However, the Civil Service Commission found otherwise. It in effect said we were wrong in the first place, and saying that it effectively said plaintiff was suitable for the job. With this finding, in fairness and justice the only thing left to be done was to order plaintiff reinstated or restored to duty. This it did not do, and we believe the Civil Service Commission was arbitrary in not so doing. Inasmuch as the Civil Service Commission was acting for and in behalf of the agency, the above arbitrary act would be imputed to the NACA.
We believe plaintiff should have been restored or reinstated and had he been, under Public Law 733, supra, he would be entitled to pay for the period of his suspension, less any outside earnings, if plaintiff’s claim is not barred by laches.
The defendant argues that even if plaintiff has stated a claim, the same is barred by laches. Defendant alleges that the first decision of the Board of Appeals and Beview sustaining the determination that plaintiff failed to meet suit *99 ability standards was made on September 28, 1954. Plaintiff did not request tbe Commission to reconsider its decision until August 23, 1955, almost 11 months later, and that this petition was not filed until January 4, 1957, more than two years after the Commission’s decision of September 28,1954. Since another employee filled the vacancy, plaintiff’s delay in seeking enforcement of his rights bars recovery.
The short answer to this contention is that had the Civil Service Commission made a correct determination initially, plaintiff would never have been suspended. Since he was suspended erroneously, as the Commissioner in effect later found, his first claim to pay during the suspension period came about when the Commission reversed. When the Board of Appeals and Beview sustained the findings of the Commission ordering suspension, plaintiff had no right of action in court. No arbitrary action could have been proved inasmuch as the Commission, as related previously, had a perfect right to say plaintiff was not suitable for employment. However, when the Commission reversed he then had a potential cause of action.
On October 24, 1955, the Commission notified him of the reversal. On November 3, 1955, plaintiff demanded reinstatement and back pay. On November 14,1955, the NACA refused to allow the claim. On December 6,1955, the NACA reaffirmed denial of his claim. On December 9,1955, plaintiff wrote the Civil Service Commission asking explanation of the Commission’s role in the discharge. On December 28, 1955, the Civil Service Commission replied. On April 16, 1956, plaintiff by letter demanded back pay from the Civil Service Commission. On April 26, 1956, the Civil Service Commission by letter denied back pay. On May 1, 1956, plaintiff by letter to the Comptroller General requested back pay. On December 17, 1956, by letter the Comptroller General disallowed plaintiff’s claim. This petition was filed J anuary 4,1957.
From the foregoing chronology it appears that rather than delay, plaintiff has been extremely diligent in processing his claim. Plaintiff almost immediately after his claim arose began demanding back pay, and in less than two years from that date had filed his petition in the Court of Claims. *100 Furthermore, plaintiff’s petition was filed within a month after the Comptroller General denied plaintiff’s claim.
The test as laid down by the Supreme Court is that plaintiff act with reasonable diligence. Myers v. United States, 272 U. S. 52; Norris v. United States, 257 U. S. 77.
Under these circumstances, we cannot say that plaintiff is guilty of laches.
Plaintiff’s motion for summary judgment is granted, and defendant’s motion is denied. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to Eule 88 (c) of the Eules of this court.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on April 3, 1959, that judgment for the plaintiff be entered for $3,350.23.